IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| BRENDA J. DEASE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:08cv328-MHT |
| | ) | (WO) |
| BEAULIEU GROUP, INC., | ) | |
| | ) | |
| Defendant. | ) | |

OPINION

Plaintiff Brenda J. Dease filed this lawsuit against
her former employer, defendant Beaulieu Group, Inc., in
state court for alleged breach of contract and tort of
outrage arising out of the termination of her employment.[1]
Beaulieu Group removed the case to this court pursuant to
28 U.S.C. §§ 1332, 1441 (diversity-of-citizenship
jurisdiction).  The case is before the court on Beaulieu

---

1.  Although the complaint includes a third count for
"emotional distress," Dease's counsel clarified in
pretrial conference that this was not a separate claim,
but rather a request for damages based on the outrage
claim.

1

Group's motion for summary judgment.  The motion will be granted.


## I.  SUMMARY-JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The court's role at the summary-judgment stage is to view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).


## II. BACKGROUND

Dease was hired as an hourly employee by Columbus Mills, Incorporated.  In 1999, Beaulieu Group acquired

Columbus Mills, and Dease was instructed to sign a form acknowledging that she had received an employee handbook. Dease says that she asked to read the form twice, but her supervisor would not permit her to read it and told her that she would lose her job if she did not sign the form. Dease's supervisor represented that signing the acknowledgment form would constitute a contract for employment. Dease signed the form.

The handbook outlines, among other things, policies and procedures for employee discipline. In the section on employee discipline, the handbook states that it will "generally follow a 'progressive' discipline procedure, involving oral or written warnings and suspensions." Def. Exh. 4 at 22 (Beaulieu Group Handbook). Nowhere does the handbook specify how many warnings precede termination, although Dease contends that Beaulieu Group's practice was to give employees three warnings prior to termination. The first page of the handbook has a disclaimer that the handbook is not an employment

3

contract.  The acknowledgment form also contains language to that effect.

On January 16, 2006, Dease was terminated by her supervisor, Pat Lafferty, for failing to resolve job performance issues.  Dease was instructed to collect her belongings and escorted off the property.  Dease was deeply humiliated by the manner in which she was terminated.

Lafferty had repeatedly counseled Dease for various shortcomings in her job performance, including "failing to perform her duties, failing to timely complete assigned tasks, failing to clock in and out, failing to communicate with department managers, leaving the office unattended, and being disrespectful to coworkers and supervisors."  Def. Exh. 2, Lafferty Affidavit.  In addition, in February and September 2005, Lafferty counseled Dease more formally for similar performance issues.  Each write-up noted that failure to improve would result in additional disciplinary action, including

4

the possibility of termination.  Dease refused to sign the write-ups.

Lafferty informed Senior Human Resources Manager Jerry Layne that she had terminated Dease.  Layne immediately contacted Dease and informed her that she was not terminated, and he suggested that they meet.  The following day, Dease met with Layne.  During that meeting, Layne reiterated that the termination was rescinded and told Dease that she should report to work the following day.  Dease did not report to work again, and did not contact or respond to calls from Beaulieu Group.  After Dease missed three days of work without contacting Beaulieu Group, the company deemed that Dease had voluntarily left her employment.

### III.  DISCUSSION

#### A.  Breach-of-Contract Claim

Dease contends that, because she was fired after two, not three, formal warnings, Beaulieu Group breached her

employment contract.   Beaulieu Group counters that no contractual relationship was ever formed and that, even if it was, no terms were violated.

In Alabama, absent evidence of a contract, an employee is 'at-will,' meaning that either the employee or the employer may terminate the employment at any time for any reason.  Ex parte Amoco Fabrics & Fibers Co., 729 So. 2d 336, 339 (Ala. 1998).   In certain instances, however, "the provisions of an employee handbook can become a binding unilateral contract, thereby altering an employment relationship's at-will status."  Id.  To show that a unilateral contract was formed this way, the employee must demonstrate: "(1) that there was a clear and unequivocal offer of lifetime employment or employment of definite duration; (2) that the hiring agent had authority to bind the principal to a permanent employment contract; and (3) that the employee provided substantial consideration for the contract separate from

6

the services to be rendered." <u>Hoffman-La Rouche, Inc. v.</u>
<u>Campbell</u>, 512 So. 2d 725, 728 (Ala. 1987).

Dease contends that Beaulieu Group's employee
handbook constituted an offer of employment that she
accepted by continuing to work for the company, thereby
creating a unilateral employment contract. However, the
facts are insufficient to show that any contract was
formed between Dease and Beaulieu Group. Dease cannot
show a "clear" or "unequivocal," <u>Hoffman-La Rouche, Inc.</u>,
512 So. 2d at 728, offer of permanent employment, because
the employee handbook expressly disclaimed any such
offer, and a handbook with such a disclaimer cannot be
construed as a unilateral contract as a matter of law.
<u>See</u> <u>Abney v. Baptist Medical Centers</u>, 597 So. 2d 682, 683
(Ala. 1992). The handbook's express disclaimer plainly
contradicts any representations by Dease's supervisor
and, at the very least, the disclaimer should have
prompted Dease to question whether a contract was being
formed. The disclaimer is on the first page of the

handbook in bold and is written clearly in plain English

set apart from other text:

> "This Handbook should not be construed
> as creating an 'employment contract' for
> any specific period of time, or to
> create other contractual rights of any
> nature.  Although Beaulieu intends that
> the benefits, policies and regulations
> outlined in this Handbook will generally
> remain in effect, it reserves the right
> at any time to amend, curtail or to
> otherwise revise the benefits, policies
> or regulations outlined in this
> Handbook."

Def. Exh. 4 at 10 (Beaulieu Group Handbook).  Even if

Dease was prevented from reading the handbook at the time

she signed for it, she had ample opportunity to read it

afterward.[2]

_____

    2.  The one-page acknowledgment form also plainly
states that the handbook is not a contract.  The form
states in full:

> "I understand that this handbook
> represents only the current policies,
> regulations, and benefits and that it
> does not constitute a contract of
> employment.  The Company retains the
> right to change these policies, benefits
> and procedures at any time it deems
>                           (continued...)

8

In sum, Dease has put forth nothing that would permit a jury to conclude that Beaulieu Group extended an offer of definite or permanent employment, let alone a "clear" or "unequivocal" offer.  Because no offer was extended, no contract was formed.[3]

────────────

(...continued)
     appropriate.

          "I understand that I have the right to terminate my employment at any time, with or without cause, with or without advance notice, and that the Company has a similar right.  I further understand that my status as an at-will employee may not be changed except in writing signed by the President of the Company.

Def. Exh. 4 at 4 (Acknowledgment Form).  Because Dease contends that she was not permitted to read the form, the court does not rely on its language in reaching its conclusion.


     3.  As a separate matter, Dease contends that the "pattern and practice of Beaulieu Group, LLC of disciplinary actions, with other employees prior to termination, established a unilateral contract with the Plaintiff upon which she reasonably relied upon to her detriment."  Compl. ¶ 32.  Dease seems to suggest that Beaulieu Group's practice of following certain disciplinary procedures created an offer of a unilateral contract to follow those procedures with respect to
(continued...)

9

Further, even if Dease were somehow able to show that a contract was formed, it is unlikely that she could show that Beaulieu Group breached the contract, for two reasons. First, she cannot show that Beaulieu Group violated the handbook's policies when it terminated her without a third warning, for the handbook does not state that employees will receive three warnings prior to termination, and, further, it expressly allows Beaulieu Group to deviate from its stated policies. See Def. Exh. 4 at 22 (Beaulieu Group Handbook) ("Misconduct or poor performance will be investigated and considered on a case-by-case basis" and progressive disciplinary procedure will be applied "[w]here we deem it to be

_____

(...continued)

Dease. Dease offers no authority for this contention. However, even assuming that Beaulieu Group's practice of following certain procedures somehow constituted an "offer" to use those procedures with Dease, she cannot show that a contract was formed, for Dease did not provide "substantial consideration for the contract separate from the services to be rendered." Hoffman, 512 So. 2d at 728. In other words, Dease provided nothing to Beaulieu Group in exchange for its "offer" to abide by the policies in the handbook. Thus, no contract was formed.

appropriate.").  Thus, even if the handbook constituted
a contract, Beaulieu Group did not violate the contract's
terms.  Second, hours after she was terminated, Dease was
informed that the termination was rescinded and that she
should return to work the following day.  Dease did not
return to work; did not respond to calls from management;
and did not call Beaulieu Group for at least three days.
Beaulieu Group's policy is that an employee is deemed to
have voluntarily terminated her employment after three
"no call/no show" days.  Accordingly, because Dease chose
not to return to work after the termination was
rescinded, she cannot show that Beaulieu Group even
terminated here.

Dease's breach-of-contract claim fails.


### B.  Outrage Claim

Dease also brings a claim for the tort of outrage
based on the manner in which she was fired and escorted
out of the premises.  To make this claim, Dease must show

that Beaulieu Group intentionally or recklessly engaged in "extreme and outrageous conduct" that caused her to suffer emotional distress "so severe that no reasonable person could be expected to endure it."  Carraway Methodist Health Sys. v. Wise, 986 So. 2d 387, 401 (Ala. 2007) (quoting American Road Service Co. v. Inmon, 394 So. 2d 361, 365 (Ala. 1981)).  Indeed, Beaulieu Group's conduct must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."  Id.

Dease seems to base her outrage claim solely on her assertion that an escort was neither necessary nor appropriate to remove her from the building.[4]  She does not allege any additional facts suggesting that the manner in which she was escorted out of the building was

_____

4.  Beaulieu Group contends that Dease was escorted off the premises because she refused to leave.  The court need not resolve this factual dispute, as Dease's claim fails either way.

harsh or abusive. But the mere act of escorting a terminated employee out of the building, without more, is not "atrocious" or otherwise intolerable conduct--rather, it is arguably a routine occurrence. That Dease felt humiliated is not enough to render the conduct outrageous.

Beaulieu Group's conduct is, if not less egregious, indistinguishable from the conduct complained of in Carraway Methodist Health Sys. v. Wise, 986 So. 2d 387 (Ala. 2007), where an employee was suddenly terminated from his long-time employment and forced to leave his workplace without being allowed to collect his personal belongings or say goodbye to his coworkers. Id. at 401. The Wise court explained that, although the termination and the manner in which it occurred may have been a "personal crisis" for the employee, it did not reach the level of conduct "intolerable in a civilized society." Id.

13

Even if the court accepted every single one of Dease's allegations as true, the conduct of her employer cannot be said to be "atrocious" or "beyond all possible bounds of decency."  <u>Id</u>. at 401. Dease's claim for outrage must fail.


**\*\*\*\***

For the foregoing reasons, Beaulieu Group's motion for summary judgment will be granted on all claims.  An appropriate judgment will be entered.

DONE, this the 16th day of January, 2009.


     <u>   /s/ Myron H. Thompson   </u>
     UNITED STATES DISTRICT JUDGE